IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| XAVIER CASTRO, B87782,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| vs.   ) | Case No.  **3:13-cv-00303-JPG-PMF** |
| ) | |
| MICHAEL ATCHISON, *et al.*,   ) | |
| ) | |
| Defendants.   ) | |

**REPORT AND RECOMMENDATIONS**

**FRAZIER, Magistrate Judge:**

Before the Court is the Motion for Summary Judgment filed by defendants Eric Quandt, Shane Quandt, Justin Snell, Jodie Strong and Jacques Webb (Doc. 55). Plaintiff Xavier Castro did not file a response to the motion. Castro is an inmate with the Illinois Department of Corrections ("IDOC") and he is currently located at Lawrence Correctional Center ("Lawrence"). Castro filed this lawsuit on March 25, 2013 (Doc. 1). On April 22, 2013 Judge Gilbert conducted a merits review screening pursuant to 28 U.S.C. § 1915A.[1] Castro now proceeds on the following colorable claims:[2]

> **Count 3**: Against Shane Quandt for cruel and unusual punishment and/or deliberate indifference to the conditions of Plaintiff's confinement in cell 304,[3] in violation of the Eighth Amendment and the common law of Illinois regarding negligence;
> **Count 4**: Against Eric Quandt[4] and Justin Snell for cruel and unusual punishment and/or deliberate indifference to the conditions of Plaintiff's confinement in cell 316, in violation of the Eighth Amendment and the common law of Illinois regarding negligence,
> **Count 6**: Against Jodie Strong and Jacques Webb for cruel and unusual punishment and/or deliberate indifference to the conditions of Plaintiff's confinement on the transfer

---

[1] Counts 1, 2, 5 and 7 were dismissed in the merits review order.
[2] Judge Gilbert's merits review order originally included C/O Cash as a defendant in Count 6. He was later dismissed in Judge Gilbert's April 14, 2014 Order (Doc. 45).
[3] The cell mentioned in Count 3 is at various times referred to as "cell 304" and "cell 305." Although stated differently, the documents appear to refer to the same cell. For the sake of consistency, the cell that Castro was placed in from May 13, 2011 to July 7, 2011 will be referred to as cell 304.
[4] Eric Quandt is the younger brother of Shane Quandt. (Doc. 56-1, p. 22).

bus, in violation of the Eighth Amendment and the common law of Illinois regarding negligence.[5]

The defendants now seek summary judgment on the Eighth Amendment claims in Count 3 and Count 6. The defendants also seek summary judgment on the state law negligence claims in Count 3, Count 4 and Count 6. For the following reasons, it is RECOMMENDED that the defendants' motion for summary judgment be GRANTED. If the defendants' motion for summary judgment is granted in full, all that will remain in this action is the Eighth Amendment claim against defendants Eric Quandt and Justin Snell at Count 4.

## I.     BACKGROUND

The events that give rise to this litigation began in 2011 while plaintiff Xavier Castro was an inmate at Menard Correctional Center ("Menard"). Castro arrived at Menard in early February, 2011. (Doc. 1, p. 6). Castro suffers from a variety of medical problems, including pinched nerves in his back, a metal plate located near his cervical vertebrae, Hepatitis C and constipation. (Castro deposition, Doc. 56-1, p. 9). He also has limited use of his hands and

---

[5] The full list of counts (including the counts dismissed for failure to state a claim) is as follows:
**Count 1**: Against Warden Atchison and Unknown Major for violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111-12213) relative to cell 305;
**Count 2**: Against Warden Atchison and Unknown Major for violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111-12213) relative to cell 316;
**Count 3**: Against Warden Atchison, Unknown Major and C/O Quan #1 for cruel and unusual punishment and/or deliberate indifference to the conditions of Plaintiff's confinement in cell 305, in violation of the Eighth Amendment and the common law of Illinois regarding negligence;
**Count 4**: Against Warden Atchison, Unknown Major, C/O Quan #2 and C/O Snell for cruel and unusual punishment and/or deliberate indifference to the conditions of Plaintiff's confinement in cell 316, in violation of the Eighth Amendment and the common law of Illinois regarding negligence
**Count 5**: Against C/O Quan #1 for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment;
**Count 6**: Against C/O Strong, C/O Webb and C/O Cash for cruel and unusual punishment and/or deliberate indifference to the conditions of Plaintiff's confinement on the transfer bus, in violation of the Eighth Amendment and the common law of Illinois regarding negligence; and
**Count 7**: Against Warden Atchison and Unknown Major for failing to hold a hearing or investigate Plaintiff's grievance, in violation of the Due Process Clause of the Fourteenth Amendment.

limited mobility. (Doc. 1, p. 6). To assist with movement, Menard staff provided Castro with metal crutches. On July 1, 2011 he was given a walker. (Doc. 56-2, p. 1-2).

According to his complaint, Castro's difficulties began on May 13, 2011 when he was placed in cell 304 at the Menard Health Care Unit ("HCU"). Castro resided in cell 304 from May 13 until July 7, 2011 (Doc. 1, p. 6). Inside cell 304 there was a sink and toilet but the toilet did not have disability assistance handrails. As a result, Castro had difficulty placing himself on the toilet. In one particular instance, Castro fell while attempting to sit on the toilet. (Doc. 56-1, p. 26). Castro fell to the cell floor and soiled some of his clothing. His cellmate was suffering from a broken leg at the time and could offer little help. While this was occurring, defendant Shane Quandt was walking outside of Castro's cell. Castro called out to Quandt for help and asked for assistance to help him off of the ground. Castro also requested to use the shower facilities and that he be provided with clean clothing. Quandt declined Castro's requests and told him that he was not scheduled to use the shower on this date. Quandt walked away and sometime shortly thereafter Castro was able to pick himself up off of the ground. (Doc. 56-1, p. 27). Castro's complaint states that there were other instances where he soiled his clothing because of difficulty using the toilet (Doc. 1, p. 6-7), but no other occurrences were mentioned in the deposition as to cell 304.

On July 7, 2011 Castro was transferred within the Menard HCU from cell 304 to cell 316. (Doc. 1, p. 7). Cell 316 did not have a sink or a toilet. Castro was however provided with a portable urinal. While in cell 316 Castro often asked Eric Quandt and Justin Snell that he be let out of his cell to use the bathroom facilities. Castro stated at his deposition that Quandt and Snell would frequently deny these requests. As a result, Castro was forced to urinate on himself, defecate in plastic bags and experience long delays before he could use the bathroom facilities.

Castro's experiences in cell 316 form the basis of Count 4 of his complaint. Eric Quandt and Justin Snell are the only defendants included in Count 4 and none Castro's other counts are against either two.

The events that form the basis of Count 6 of Castro's complaint occurred on January 5, 2012 when Castro was transferred from Menard to Lawrence. At approximately noon on that date Castro was placed in a wheelchair and loaded into in an IDOC transfer van (Doc. 56-3. p. 1). The medical staff at Menard notified the transfer team that Castro frequently needed to urinate and Castro was provided with a plastic portable urinal. The transfer team consisted of three correctional officers; a driver, an individual in the front passenger seat carrying a firearm (along with the keys to Castro's restraints) and defendant Jacques Webb sitting behind Castro. The driver and front passenger were separated from the back of the van by a physical partition. (Doc. 56-3. p. 1).

Defendant Jodie Strong was also included as a defendant and named by Castro as a member of the transfer team. However Castro admitted at his deposition that Jodie Strong was erroneously included as a defendant and that she was not in fact part of the transfer team. (Doc. 56-1, p. 46). Jodie Strong also submitted an affidavit stating that she was not a member of Castro's transfer team, and had never been a member of a inter prison transfer team. (Doc. 56-5, p. 1-2).

After Castro was placed in the transfer van the four individuals departed Menard without incident. (Doc. 56-1, p. 38). Approximately one hour into the journey (at about 1:00 PM) Castro notified the correctional officers that he needed to urinate. Webb then provided Castro with the portable urinal. Castro told Webb that his restraints and the "black box" device placed over his hands prevented him from adjusting his clothing to use the portable urinal. Castro instead

requested that the correctional officers stop the van and remove his restraints so that he could urinate. The correctional officers refused Castro's requests and proceeded onward. Castro could no longer hold his bladder and he urinated on himself in the wheelchair. (Doc. 56-1, p. 38, Doc. 56-3, p. 3). The van was approximately one half hour away from Big Muddy River Correctional Center when this occurred. (Doc. 56-3, p. 3).

The journey continued without incident until the van approached Lawrence. When the transfer van was approximately seven miles away from Lawrence, Castro notified the correctional officers that he again needed to urinate. (Doc. 56-1, p. 42). Webb responded by telling Castro that the van was about ten minutes away from Lawrence and that he should wait to urinate until they reach the facility. At this point Castro urinated on himself a second time. (Doc. 56-3, p. 3).

In their motion for summary judgment the defendants attached the declaration of Chad Jennings. (Doc. 56-4, p. 1-2). Chad Jennings is currently a Major at Lawrence Correctional Center and he was a Lieutenant at the facility during the events in question. Jennings states that Lawrence policies "dictate that an inmate that is being taken out of the facility must be restrained at all times" and the "black box" type device "must be placed over the inmate's arms." (Doc. 56-4, p. 1). Moreover, "a vehicle in transit with an inmate may not deviate from its scheduled route without authorization from the Shift Commander and Duty Warden. If that authorization is granted, the vehicle is to travel to a secured facility, if at all possible, before the vehicle is stopped or the restraints are removed." (Doc. 56-4, p. 2). Jennings is not a party to this case nor was he part of the transfer team that transported the plaintiff.

Castro and the transfer team arrived at Lawrence at approximately 4:00 PM. (Doc. 56-1, p. 38). Upon arrival he was immediately transported to the Lawrence Health Care Unit for

processing. After he was dropped off at the HCU defendant Webb returned to his regular duty station within Lawrence. (Doc. 56-3, p. 3). Castro filed this lawsuit on March 25, 2013 (Doc. 1).

## II. ANALYSIS

The defendants now seek summary judgment for the state law negligence claims and for the Eighth Amendment claims at Counts 3 and 6 of Castro's complaint. "Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015); Fed.R.Civ.P. 56(a). When reviewing a motion for summary judgment "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255.

### A. The Eighth Amendment Claims

Castro asserts that the defendants violated his Eighth Amendment rights. The Eighth Amendment prohibits cruel and unusual punishment and it is applicable to the states through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344 – 345 (1981). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner plaintiff's claimed deprivation must be objectively serious and second; the prison official must demonstrate "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Pursuant to the Eighth Amendment, prisoners may not be deprived the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Moreover, "[a]dequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must

6

be afforded prisoners." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (internal cite and quote omitted). "However, not every injury or deprivation suffered by a prisoner translates into constitutional liability for prison officials responsible for the prisoner's health and well-being." *Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999). In *Jaros* the Seventh Circuit held that the lack of toilet grab bars did not violate a prisoner's Eighth Amendment rights, even though the prisoner plaintiff was disabled and experienced difficulty without such assistance. *Id.* at 670 – 671.

In the present case, no reasonable jury could find that defendant Shane Quandt violated Castro's rights under the Eighth Amendment. First, Castro asserts that Shane Quandt violated his Eighth Amendment rights when Quandt failed to provide assistance in picking him up. However Castro admitted at his deposition that he was able to pick himself back up after Shane Quandt walked away. Under these circumstances, a correctional officer's failure to pick up an ambulatory prisoner does not amount to a deprivation of the "minimal civilized measure of life's necessities." The experience may have been unpleasant but the unpleasantness was brief – and far short of an Eighth Amendment violation.

Second, Castro asserts that his Eighth Amendment rights were violated when Shane Quandt declined to provide a clean set of clothes and unscheduled access to the shower facilities. Without the benefit of a response to the motion for summary judgment the Court is unable to determine how long Castro remained in his soiled clothes and without shower access. The record is clear however that there was a sink in Castro's cell. With access to a sink and running water, Castro had the ability to clean himself and his soiled clothing. While this would not be an optimal long term solution, Castro's Eighth Amendment rights were not violated when he was temporarily required to clean himself and his clothing using the jail sink. "Inmates cannot expect

the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988). Defendant Shane Quandt is therefore entitled to summary judgment for Castro's Eighth Amendment claim at Count 3.

The next issue is whether defendants Jodie Strong and Jacques Webb are entitled to summary judgment for Count 6 of Castro's complaint. As a preliminary matter, Castro admitted at his deposition that there were no female members of his transfer team and that Jodie Strong was erroneously included in his complaint. She is thus entitled to summary judgment. The question therefore remains whether Webb violated Castro's Eighth Amendment rights during the January 5, 2012 prison transfer between Menard and Lawrence. Castro stated in his complaint and in his deposition that he was denied urinal access for approximately four hours. Because he was denied access to a urinal, Castro urinated on himself twice during the trip.

As previously noted, "[a]dequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros*, 684 F.3d at 670 (internal cite and quote omitted). In determining whether a deprivation violates the Eighth Amendment, courts must consider the "amount and duration of the deprivation" *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (addressing an Eighth Amendment claim that a prisoner was denied food), while being mindful of the "[S]tate's interests in prison safety and security." *Washington v. Harper*, 494 U.S. 210, 223 (1990). Generally, prison officials do not run afoul of the Eighth Amendment when prisoners are denied toilet access for brief periods of time. *See*, *e.g., Thomas v. Cox*, No. 10-CV-997-GPM, 2011 WL 3205660, at *3 (S.D. Ill. July 27, 2011) (inmate failed to state Eighth Amendment claim where he experienced delays in bathroom access because he was required to share two toilets with 90-100 other men); *Clark v. Spey*, No. 01–C–9669, 2002 WL 31133198 at *2–3 (N.D.Ill. Sept.26, 2002) (inmate placed in

cell overnight without functioning toilet failed to state Eighth Amendment claim). However "[n]o static test exists that measures whether conditions of confinement are cruel and unusual, for the Eighth Amendment draws its meaning from the 'evolving standards of decency that mark the progress of a maturing society.'" *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

In the present case, Castro's unpleasant journey from Menard to Lawrence failed to rise to the level of an Eighth Amendment violation. During the voyage Castro was denied a toilet for four hours and he sat in his own urine for the last three hours of the trip. At most, Castro suffered from temporary discomfort and inconvenience. While certainly not an ideal situation, Castro was not deprived of "the minimal civilized measure of life's necessities" when the transport team declined to stop the van or unfasten his restraints. Moreover, neither the Seventh Circuit nor the Supreme Court have held that denial of toilet access for a four hour period, by itself, violates the Eighth Amendment. In sum, defendants Jodie Strong and Jacques Webb are entitled to summary judgment for Castro's Eighth Amendment claim at Count 6.

Because no Eighth Amendment violations occurred for Count 3 or Count 6 of Castro's complaint, the Court need not address the issue of qualified immunity for those claims.

### B. The Negligence Claims

The last issue to be addressed is therefore whether defendants are entitled to summary judgment for Castro's pendent state law negligence claims at Count 3, Count 4 and Count 6. The defendants argue that they are entitled to summary judgment because the negligence claims are barred by state law sovereign immunity.

Although Castro is proceeding in federal court, state rules of immunity control his state law negligence claims. *Benning v. Bd. of Regents of Regency Universities*, 928 F.2d 775, 777 (7th Cir. 1991). Under Illinois law, certain kinds of negligence claims against state of Illinois employees must be brought in the Illinois Court of Claims. The Illinois Court of Claims has the "exclusive jurisdiction to hear and determine ... [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit...." 705 ILCS 505/8(d). Although the named defendants in this case were sued in their individual capacities, the Illinois Supreme Court held in *Healy v. Vaupel* that,

> [w]hether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought. Thus, the prohibition against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested.

133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990).

The Court went on to hold that a cause of action "is only nominally against the employee" when the following three elements are met;

> there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

133 Ill. 2d at 309, 549 N.E.2d at 1247 (*quoting Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986)). In such a situation "the claim involves actions which may be attributed to the State" and the Court of Claims holds exclusive jurisdiction. *Robb*, 147 Ill. App. 3d at 716, 498 N.E.2d at 272.

In the present case, the Illinois Court of Claims has exclusive jurisdiction over Castro's state law negligence claims. In his complaint, Castro states that while he was in the Menard HCU he was not provided with adequate toilet facilities and that he was denied proper assistance to use the facilities that were available. Castro also states that he should have been provided assistance to use the urinal during the Menard to Lawrence transfer. Providing adequate access and assistance to prisoners needing to use the restroom clearly falls within prison officials' scope of authority. Moreover, the duty alleged to have been breached in this case (denial of restroom access and assistance) is not "owed to the general public independent of the fact of State employment." Finally, providing restroom access and assistance "involve[s] matters ordinarily within [the defendants'] normal and official functions of the State." Thus, Castro's negligence claims at Count 3, Count 4 and Count 6 must be brought in the Illinois Court of Claims.

## III. RECOMMENDATIONS

For the foregoing reasons, it is recommended that the defendants' motion for summary judgment be GRANTED. If granted, the negligence claims will be dismissed along with the Eighth Amendment claims at Count 3 and Count 6. The only surviving claim will be Castro's Eighth Amendment claim at Count 4.

**SO RECOMMENDED.**

**DATED: <u>September 14, 2015</u>.**

s/ *Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
